IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:99-cr-00214-1

MARK EARL HENDERSON

MEMORANDUM OPINION AND ORDER

Mark Earl Henderson ("Henderson") is incarcerated at the Federal Correctional Institution at Ashland, Kentucky. At that facility, the COVID-19 pandemic has struck with a vengeance. Until recently, Ashland had kept its COVID-19 cases in check. But during the pendency of Henderson's motions, Ashland has had a significant outbreak. As of the date of this order, the Bureau of Prisons reports that 179 inmates and 21 staff members are actively infected. *COVID-19 Update*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2020). One inmate died on December 3. *Inmate dies at FCI Ashland; Tests positive for COVID-19 post-mortem*, WSAZ NewsChannel 3, https://www.wsaz.com/2020/12/04/inmate-dies-at-fci-ashland-tests-positive-for-covid-19-post-mortem; *Id*. The question before this court is whether Henderson has demonstrated that extraordinary and compelling reasons justify his request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, Henderson's Motion for Compassionate Release, [ECF No. 273], is **GRANTED**.

I. Background

On July 19, 2000, I sentenced Henderson to a total of 420 months of imprisonment followed by three years of supervised release following his convictions on two counts of conspiracy to distribute a controlled substance, one count of money laundering, and one count of possession of a firearm during and in relation to a drug trafficking offense. [ECF No. 92]. On March 4, 2016, pursuant to 18 U.S.C. § 3582(c)(2) the court modified Henderson's sentence to 292 months as to counts 1, 2, and 3 to run consecutive with a 60 month sentence of imprisonment as to count 5. [ECF No. 267]. Henderson is currently incarcerated at Federal Correctional Institution Ashland ("FCI Ashland") with a projected release date of September 7, 2024. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last visited Dec. 7, 2020).

On July 27, 2020, Henderson moved for compassionate release [ECF No. 271]. In that Motion, Henderson argued that he is housed in close quarters, that he is elderly, has served a significant length of time and that he suffered from kidney stones. I denied that Motion. [ECF No. 272]. I found that, at the time, Henderson had not demonstrated both that he i) had a condition that put him at a severe risk of developing a serious illness should he contract COVID-19 and; ii) that he was housed in a facility where the inmates face a high risk of contracting COVID-19.

On October 15, 2020, Henderson filed a Renewed Motion for Compassionate Release [ECF No. 273]. In that Motion, Henderson restated his previous arguments and argued that, while Ashland had not experienced a severe outbreak of COVID, he nonetheless merited compassionate release because of his age, declining health,

exemplary conduct while in prison and the length of his sentence. The Government filed a pro-forma response [ECF No 276] in which they asked me to deny the Renewed Motion "for the same reasons it denied his original motion."

Finally, Henderson filed a reply memorandum on November 23rd. [ECF No. 278]. While the deadline to reply to the Government's brief had passed, I chose to accept that brief in light of its allegation of a "huge outbreak of COVID-19 positive cases at FCI-Ashland." Henderson now petitions the court, arguing that the combination of his health issues, the COVID-19 pandemic, and prison conditions constitute "extraordinary and compelling reasons" for his release. According to Henderson, he suffers from kidney stones and has a family history of polycystic kidney disease. ("PKD"). [ECF. No. 271 at 3]. Despite this family history, Henderson has not been diagnosed with PKD. An independent review of the record in this case suggests that Henderson also suffers from obesity.[1]

## II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v.*

---

[1] The Centers for Disease Control considers obesity to be one of the conditions that puts a person at an increased risk of severe illness from the virus that causes COVID-19. CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Dec. 9, 2020). The CDC considers a Body Mass Index ("BMI") measurement of 30 or greater as medically obese. CDC, *Defining Adult Overweight and Obesity*, https://www.cdc.gov/obesity/adult/defining.html (last accessed December 7, 2020). In this case, Henderson's medical records indicate that in 2017, his BMI was 29.5. *See* Ex. 12. In March 2020, his height was documented as 5'8" and his weight 198 pounds. *Id.* According to the CDC BMI calculator, Henderson's BMI at this height and weight places him in the obese range.

*Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Henderson's sentence under compassionate release, I must find that Henderson has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018).

### a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and give BOP thirty days to respond. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days has elapsed since the request was filed), a court "may reduce the term of imprisonment . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

Henderson has supplied documentary evidence to demonstrate that he applied to FCI Ashland's Warden for Compassionate Release more than 30 days before filing his *original* Motion for Compassionate Release [ECF No. 270]. I have previously held that when a Defendant files a renewed motion for compassionate release based on

new or additional information, that he or she must again exhaust his or her administrative resources. *See, e.g., United States v. Debra Martin*, no. 2:17-cr-198 (S.D. W.Va. Nov. 19, 2020). Here, the Government does not dispute that exhaustion has been satisfied. I therefore continue my analysis of extraordinary and compelling circumstances under the First Step Act.

### b) Extraordinary and Compelling Reasons

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A). Whether or not there are extraordinary and compelling reasons to justify compassionate release is an individualized inquiry; many factors go into the analysis of the inmate's particular health condition and circumstances. I have adopted the approach that an inmate must demonstrate that he or she has one of the underlying conditions that the CDC considers to be an elevated risk factor for a serious illness should the person contract the virus that causes COVID-19. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Dec. 9, 2020). Once an inmate has made that showing, I must then examine the particular circumstances at the inmate's place of confinement in addition to any other factors that may be relevant to determine whether the inmate is at a heightened risk of contracting COVID-19. *See United States v. McCoy*, --- F.3d ---, 2020 WL 7050097, at * (4th Cir. Dec. 2, 2020) (stating that "District Courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted). In this case, Henderson satisfies both prongs. He is obese, a CDC

recognized elevated risk condition and; his place of confinement is experiencing a severe outbreak. Of course, the risk to be evaluated is a composite of both prongs. A defendant suffering an underlying condition may not demonstrate extraordinary and compelling circumstances if his place of confinement is relatively unaffected by the pandemic; a generalized fear of infection is insufficient to make a showing of extraordinary and compelling reasons. Conversely, whereas here, the infection is ubiquitous the calculus gives more weight to that factor.

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[2] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). The United States Court of Appeals for the Fourth Circuit has clarified that district courts are not bound by the enumerated extraordinary and compelling reasons listed in Guidelines § 1B1.13 because the Guidelines have not been updated since the passage of the First Step Act. *McCoy*, --- F.3d ---, 2020 WL 7050097, at *27 (4th Cir. Dec. 2, 2020) ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means the district court need not conform . . . to § 1B1.13 in determining whether

---

[2] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

there exist 'extraordinary and compelling reasons' for a sentence reduction."). Accordingly, many courts have found "extraordinary and compelling" reasons "supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19." *Bass*, 2020 WL 2831851, at *7 (citing *e.g.*, *Rodriguez*, 2020 WL 1627331, at *9 (finding an "extraordinary and compelling reason" on the basis of the inmate's diabetes, high blood pressure, and liver abnormalities, the outbreak at FCI Elkton, and the short period remaining on his sentence); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury); *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908, at *2–4 (D. Conn. May 11, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and age of 58, in combination with conditions at FCI Danbury); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *2, 9 (S.D.N.Y. Apr. 20, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension, age of 55, and conditions at FCI Butner, which had 60 infected inmates); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and the presence of 27 reported inmate cases in his facility); *United States v. Pena,* No. 15-CR-551, 2020 WL 2301199, at *3, 4 (S.D.N.Y. May 8, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and hyperlipidemia and the presence of 43 confirmed cases at

"the most heavily populated BOP facility"); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's immunocompromization and the nature of the facility, in which "the residents—some of whom, including Defendant, work off-site on week days and stay with their families on weekends—cycle in and out of the facilities from all over the district, and staff at the facilities leave and return daily, without screening"); *United States v. Jenkins*, No. 99-CR-00439-JLK-1, 2020 WL 2466911, at *5 (D. Colo. May 8, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's obesity and history of strokes in a facility with one reported case); *United States v. Kelly*, No. 13-CR-59, 2020 WL 2104241, at *7–8, 10 (S.D. Miss. May 1, 2020) (finding an "extraordinary and compelling reason" solely on the basis of conditions at the low-security facility BOP facility in Oakdale, also named in the April 3 Memo, despite the inmate's young age and lack of any other risk factors for severe illness); *see also Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html).

Moreover, numerous courts have found that, in light of the COVID-19 pandemic that obesity may qualify as a compelling reason for compassionate release. *See, e.g., United States v. Williams*, PWG-19-134, 2020 U.S. Dist. LEXIS 101054, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release in light of COVID-19); *United States v. Staten*, PJM-01-284-4, 2020 U.S. Dist. LEXIS 150231, 2020 WL 4904270, at *2 (D. Md. Aug.

18, 2020) (finding an "extraordinary and compelling reason" for compassionate release based on a BMI of 38); *United States v. Dawson*, No. 18-40085, 2020 U.S. Dist. LEXIS 64383, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release based on a defendant's obesity: "He has a medical condition (obesity) that the CDC recognizes puts him at an increased risk of developing serious illness if he were to become infected with COVID-19."); *United States v. Daniels*, No. 19-00709, 2020 U.S. Dist. LEXIS 63385, 2020 WL 181342, at *2 (N.D. Cal. Apr. 9, 2020) (finding severe obesity constitutes compelling reason for release).

The 4th Circuit has held that a substantial amount of time served can, in conjunction with other factors, form part of the basis for "extraordinary and compelling" circumstances warranting release under 18 U.S.C § 3582(c)(1)(A)(i). *McCoy*, 2020 U.S. App. LEXIS 37661, --- F.3d --- , (4th Cir. Dec. 2, 2020). In *McCoy*, the defendants were convicted of robberies and accompanying firearms violations under 18 U.S.C. § 924(c.). The District Court noted that the Defendant served 17 years of "an incredible [32-year] mandatory sentence imposed." In upholding the District Court's authorization of compassionate release, our Court of Appeals approved of the lower court's use of the length of the sentence and the length of time served in determining whether the inmate had demonstrated "extraordinary and compelling circumstances." *McCoy*, 2020 U.S. App. LEXIS 37661, at *11.

Finally, the *McCoy* court looked at the use of retroactive sentence reduction when the statute of conviction has been amended. At the time of conviction, 18 U.S.C. § 924(c) required the District Court to "stack" the Defendants' convictions, which exposed them to mandatory minimum sentences When Congress passed the First

9

Step Act, it abolished "stacking" under 18 U.S.C. § 924(c). Therefore, the 4th Circuit explained, the sentences that the Defendants would have received for the same conduct today would be much shorter than the sentences they received at the time of conviction. *Id.* at *2

Here, Henderson argues that his undiagnosed polycystic kidney disease ("PKD") in conjunction with the possibility of contracting Covid-19 while incarcerated create extraordinary and compelling circumstances for release. Because Henderson has not been medically diagnosed with PKD, I make no findings with regard to this argument. However, the significant length of time Henderson has served in prison does, in light of the Fourth Circuit's holding in *McCoy*, present a uniquely compelling circumstance when viewed against the backdrop of the sudden spike in COVID-19 cases at his place of confinement. Henderson has served approximately 83% of his sentence for counts 1, 2, and 3 and nearly 70% of his total sentence.

In 2000, I sentenced Henderson to 360 months (plus 60 months to run consecutive) months despite statutory maximums of 240 months for each of his crimes punished under 21 U.S.C. § 841(a). At the time of sentencing, U.S.S.G. 5G1.2(d) required that I impose a consecutive sentence "to produce a combined sentence equal to the" minimum guideline range. Were I to sentence Henderson today, after the Supreme Court held in *Booker* that 5G1.2(d) is not binding, I would not have been compelled to exceed the statutory maximums in order to put his sentence at the guidelines range of 360 months for counts 1, 2, and 3. The significant amount of time that Henderson has served is a factor in my determination that extraordinary and compelling circumstances justify release. In addition, Henderson's obesity, the fact

10

that he is in his 60's and the fact that BOP has been unable to control a severe outbreak of Covid-19 at FCI Ashland combine to warrant an immediate reduction of Henderson's sentence to time served. The situation at FCI Ashland is particularly alarming as its number of cases has ballooned from single digits to nearly 180 in the span of a few weeks. It is apparent to me that the BOP is unable to control the spread of the virus and that this fact puts elderly and medically vulnerable inmates, such as Henderson at risk of irreparable harm.

The First Step Act has removed BOP's "gatekeeping function" from the compassionate release mechanism. I note that BOP has used compassionate release and home release exceedingly sparingly during this pandemic. When I observe that a BOP facility has been unable to control the spread of COVID-19 and that the BOP has not used compassionate release or home release to target medically vulnerable and elderly inmates, I find that extraordinary and compelling circumstances may arise under 18 U.S.C. § 3582(c)(1)(A)(i). Henderson's case fits this profile. Therefore, in accordance with numerous other district court decisions, I find extraordinary and compelling reasons exist here for compassionate release. *See e.g., United States v. Jackson*, No. 5:02-CR-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020) (citing *United States v. Harper*, No. 7:18-cr-25, 2020 WL 2046381, at *1 (W.D. Va. Apr. 28, 2020) (granting compassionate release where defendant had heart disease, asthma, hypertension, and sleep apnea); *United States v. Zukerman*, No. 16-cr-194, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release based on defendant's diabetes and age, paired with the COVID-19 outbreak); *United States v. Colvin*, No. 3:19-cr-179, 2020 WL 1613943, at *1 (D. Conn. Apr. 2, 2020) (granting

compassionate release based on defendant's diabetes, paired with the COVID-19 outbreak); *United States v. Gorai*, 2:18-cr-220, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) ("The court finds that defendant's asthma falls squarely within the ambit of preexisting conditions that the CDC has unambiguously explained place him at greater risk of COVID-19.")); *see also United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020) (citing cases where courts have granted compassionate release where the defendant is immunocompromised, *United States v. Robinson*, No. 18-CR-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020) (defendant was taking immunosuppressants); *United States v. Edwards*, No. 6:17-CR-00003, 2020 WL 1650406, at *4 (W.D. Va. Apr. 2, 2020) (defendant was immunocompromised due to brain cancer, chemotherapy, and steroid prescription)).

c) **Danger and Safety to the Community and Section 3553(a) Factors**

The United States Sentencing Guideline § 1B1.13 requires that for a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), a court must find that the "defendant is not a danger to the safety of others or the community" and consider the § 3553(a) factors. *Howard*, 2020 WL 2200855, at *2. Section 3142(g) sets out factors to help with the dangerousness assessment, including the following:

> (1) "the nature and circumstances of the offense charged;" (2) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history;" and (3) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*Bass*, 2020 WL 2831851, at *8 (quoting § 3142(g)).

12

Henderson's crimes were serious, as reflected by the 292 month sentence. However, Henderson's substantive crime is nonviolent. *See Sawicz*, 2020 WL 1815851, at *3 (finding that "the defendant d[id] not pose . . . a danger to the public" in part because "neither the violation on which the defendant is currently serving his prison sentence nor the conduct involved in the underlying crime involved violence"). Henderson's criminal history factor was a level I at time of sentencing. Henderson has demonstrated rehabilitation by completing vocational training to become an industrial electrician and has helped other inmates advance through vocational training. [ECF No. 271 at 2]. I have considered the § 3553(a) factors and find release after 20 years served will reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the defendant's crimes. I further find Henderson is not likely to pose a risk to others or the community if released. *See Rodriguez*, 2020 WL 3051443, at *4 (finding the defendant did not pose a danger where the defendant "does not appear to have incurred disciplinary infractions since he was sentenced, and has instead consistently taken advantage of dozens of courses offered by BOP"). I further find that Henderson has a strong support network in the community, a chance to find gainful employment, and a stable place to reside.

### d) Conclusion

Defendant's renewed motion for compassionate release, [ECF No. 272], is **GRANTED.** Henderson's Motion to Extend the Time to File a Reply [ECF No. 277] is, for cause shown, **GRANTED.** Henderson's Motion to Seal the Medical Records contained in Exhibit 12 [ECF No. 275] is **GRANTED.** Henderson's sentence is **modified to TIME SERVED to be followed by a 3-year term of supervised release.**

13

Henderson is to be placed in quarantine for a period to last 14 days **IMMEDIATELY**. At the end of the 14-day period, should he test negative for COVID-19 and be free of the symptoms of COVID-19, he is to be **RELEASED.** He has represented to the court that his address will be 1010 Cleveland Avenue, Charleston, WV 25302.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, the United States Marshal, and FCI Ashland, ST. Route 716, Ashland, KY 41105.

ENTER: December 10, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

14